IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS ECKHARDT,<br><br>Defendant. | **8:18CR37**<br><br>**FINDINGS AND RECOMMNEDAITON** |

This matter is before the Court on Defendant Douglas Eckhardt's Motion to Suppress or, Alternatively, Dismiss the Indictment. (Filing No. 13.) Defendant is charged in a two-count indictment with intent to distribute proceeds for an illegal activity and conspiracy to distribute marijuana. (Filing No. 1.)

An evidentiary hearing was held on Defendant's motion on June 29, 2018. Having heard the testimony and considered the evidence, the undersigned will recommend that the motion be denied.

## BACKGROUND

On September 20, 2017, Omaha Police Officer Jeffrey Vaughn[1] ("Officer Vaughn") observed a vehicle driven by Defendant traveling westbound on I-80 at mile marker 430 in Sarpy County, Nebraska.[2] (TR. 17.) At the time, Officer Vaughn's vehicle was facing northbound,

---

[1] Officer Vaughn has been employed as an Omaha police officer for sixteen years and has been assigned to the Omaha K-9 unit for twelve years. (TR. 11.)

[2] There is a Memorandum of Understanding ("MOU") between the Sarpy County Sheriff's Office and the Omaha Police Department that allows members of the Omaha Police K-9 unit to work in Sarpy County. (TR. 14; Ex. 2.) As required by the MOU, when Officer Vaughn is going to work in Sarpy County, he calls Sarpy County dispatch to advise that he will be working on the interstate in Sarpy County. (TR. 16.) Dispatch then notifies supervisors within the Sarpy County Sheriff's Office to let them know that Officer Vaughn will be working in Sarpy County. (TR. 16.) Officer Vaughn followed this procedure on September 20, 2017. (TR. 16, 39-40.)

sitting stationary in the median of the interstate.  (TR. 18, 45.)  Officer Vaughn testified that Defendant was traveling in the lane closest to the median.[3]  (TR. 46.)

Officer Vaughn testified that Defendant was following a white motor vehicle at the time Officer Vaughn observed him.[4]  (TR. 17.)  The cruiser's video of the stop shows a white vehicle in front of Defendant's vehicle.  (Ex. 5.)  At the point of the stop, the white vehicle was some distance in front of Defendant's vehicle.  (Ex. 5.)  According to Officer Vaughn, the white vehicle was also traveling in the lane closest to the median when it passed his vehicle.  (TR. 48.)  Officer Vaughn testified that it appeared that Defendant was following the white vehicle at an unsafe, unreasonable distance.  (TR. 18.)  As Defendant approached, Officer Vaughn used a stopwatch to get an electronically timed distance between the white vehicle and Defendant's vehicle.  (TR. 19.)  The stopwatch showed that the vehicles were traveling four-tenths of a second apart, or approximately forty feet.  (TR. 19.)  Officer Vaughn testified that he considers two seconds between vehicles acceptable.  (TR. 20.)  Officer Vaughn observed that Defendant's vehicle appeared to be a rental and that Defendant's driver's side and rear driver's side windows were down a couple of inches.  (TR. 20.)  Officer Vaughn testified that this was significant because it indicated to him, based on his experience, that the individual driving the vehicle was either a smoker or involved in transporting drugs.  (TR. 21.)  Officer Vaughn stated that he has found that individuals transporting drugs travel with their windows down to get the odor of narcotics out of the rental vehicle.  (TR. 21.)

---

[3] Officer Vaughn testified that because his cruiser is equipped with an older camera system, the camera in his cruiser did not start until he turned on his lights.  (TR. 41.)  In this case, this did not occur until Officer Vaughn caught up to Defendant's vehicle.  (Ex. 5.)  Therefore, Defendant's passing of Officer Vaughn's cruiser is not shown on the video.  At the time of the traffic stop, Defendant's vehicle was in the center lane.  (Exs. 5, 102.)  Exhibit 102 is a screenshot from the video and it shows a white truck in front of Defendant's vehicle.  The screenshot shows that the truck was traveling in the lane furthest from the median.   At the time the video starts, it clearly shows a white passenger vehicle in front of Defendant's vehicle and in the same lane as Defendant.  The white truck then moved from the far right lane into Defendant's lane and was between Defendant's vehicle and the white passenger vehicle.  (Ex. 5.)

[4] Defendant testified that prior to getting pulled over, there was a large, white truck around him.  Defendant stated that he was not following the truck or any other vehicle prior to being stopped.  (TR. 82.)  However, Defendant indicated to Officer Vaughn that he was following vehicles in front of him too closely because the vehicles in front of him had slowed down for law enforcement officers in front of them.  (Ex. 5 at 3:44, TR. 87-88.)

2

Officer Vaughn pulled into traffic to conduct a traffic stop on Defendant's vehicle. (TR. 22.) There were vehicles between Officer Vaughn and Defendant because the traffic was heavy on the interstate. (Tr. 22.) Officer Vaughn caught up to Defendant and activated his overhead lights. (TR. 22.) According to Officer Vaughn, from the time he activated his overhead lights, it took Defendant over thirty seconds to pull over.[5] (Ex. 5; TR. 23.) Officer Vaughn testified it usually takes individuals around ten to fifteen seconds to pull over. (TR. 24.)

Once Defendant stopped, Officer Vaughn approached the passenger's side window of Defendant's vehicle.[6] (TR. 24.) Officer Vaughn noticed that Defendant had a pillow and blanket on the back seat. He also noticed there were food and drink items scattered in Defendant's vehicle. (TR. 24.) Officer Vaughn testified that he believed this was significant because, in his experience, it indicates hard driving, which means that an individual is attempting to move from one point to another as quickly as possible. (TR. 24.) Officer Vaughn explained the reason for the traffic stop, and requested Defendant's driver's license, vehicle paperwork, and rental agreement, which Defendant provided. (TR. 24-25.)

Officer Vaughn asked Defendant to step back to his cruiser to review the paperwork. (TR. 25.) While waiting for dispatch to run Defendant's driver's license and conduct a warrant check, Officer Vaughn engaged Defendant in conversation. (TR. 25.) Defendant told Officer Vaughn that he was traveling to Commerce City, Colorado, which is a suburb of Denver, Colorado. (TR. 26-27.) Defendant initially told Officer Vaughn that he was not sure how long he was going to be there, but he later indicated he was going to be there for a couple of days. (TR. 27.) Defendant said he was potentially going to visit Estes Park to look at jewelry because he is a collector and sells jewelry. (TR. 27.) Defendant stated he was going to visit friends and relatives. (TR. 28-29.) He later indicated that he was only going to visit his nephew, and that the friends he mentioned were actually his nephew's friends. (TR. 29.) Defendant did not know any addresses or phone numbers for those individuals, but he stated he knew where he was going because he had been

---

[5] The video shows that it takes Defendant 30 seconds to pull over. (Ex. 5.)

[6] Officer Vaughn's body microphone was not working. (TR. 42.)

3

there before.  (TR. 29-30.)  Defendant's driver's license indicated that he was from Illinois.  (TR. 27.)  Defendant testified that he was traveling from the Quad Cities to Colorado.  (TR. 80-81.)

Once Officer Vaughn received word from dispatch that Defendant had a valid driver's license and no warrants, he gave Defendant a warning ticket and returned his paperwork.  He then asked Defendant whether he could ask him some additional questions.  (TR. 31.)  Defendant agreed.  (TR. 31; Ex. 5.)  Officer Vaughn asked Defendant whether he had any illegal items in his vehicle, such as drugs.  Officer Vaughn also asked Defendant if he had any large amounts of U.S. currency.  (TR. 31; Ex. 5.)  Defendant denied having such items in the vehicle. (TR. 31; Ex. 5.)  Officer Vaughn then asked Defendant if he could search his vehicle, and Defendant shock his head yes.  (TR. 32.)  Officer Vaughn asked Defendant again whether he could conduct the search, and Defendant verbally responded he could.  (TR. 32; Ex. 5).

Officer Vaughn began to search the vehicle and located a purple Crown Royal bag which contained less than an ounce of marijuana.  (TR. 32.)  Officer Vaughn came back to his vehicle and spoke to Defendant about the marijuana.  Defendant acknowledged that there was marijuana in the vehicle.  (TR. 32.)  Officer Vaughn then searched the trunk of the vehicle and observed a garment bag and a black duffel bag.  Inside the duffel bag, Officer Vaughn found a white plastic grocery bag filled with approximately $33,000.00, which was held together with rubber bands.  (TR. 33.)  Officer Vaughn returned to his cruiser to ask Defendant about the money.  Defendant told Officer Vaughn that there was about $20,000.00 in the vehicle and that he was going to use the money to purchase jewelry.  (TR. 33, 34-35.)  Officer Vaughn found approximately three pounds of marijuana in the garment bag.  (TR. 34.)

Officer Vaughn placed Defendant in handcuffs.  (TR. 34.)  Defendant did not make any statements at that time.  (TR. 34.)  Defendant and his vehicle were transported to the City of Omaha's impound lot located at 78th and F Street.  (TR. 34.)

## DISCUSISON

Defendant requests that the Court suppress evidence obtained following the traffic stop and search of his vehicle on September 20, 2017. Defendant argues that Officer Vaughn was outside his primary jurisdiction and lacked authorization to conduct the traffic stop. Defendant also claims Officer Vaughn lacked probable cause to believe Defendant committed a traffic violation.[7] The undersigned finds each of Defendant's arguments unpersuasive.

### 1.    Officer Vaughn's Jurisdiction

There is MOU between the Sarpy County Sheriff's Office and the Omaha Police Department that allows members of the Omaha Police K-9 unit to work in Sarpy County. (TR. 14; Ex. 2.) As required by the MOU, Officer Vaughn contacted Sarpy County dispatch and advised that he was going to be working in Sarpy County on September 20, 2017.[8] Although Officer Vaughn testified he did not receive verbal authorization from Sarpy County dispatch to patrol in Sarpy County, this is not required by the MOU. Officer Vaughn further testified that he is not usually provided verbal authorization and is only contacted if there is a specific call for him. (TR. 40.) Based on the MOU and testimony at the hearing, the undersigned finds that Officer Vaughn was authorized to conduct the traffic stop.

### 2.    Stop and Search of the Vehicle

Officer Vaughn testified that he stopped Defendant for following a white vehicle too closely. "A police officer may stop a vehicle when he or she has probable cause to believe that the driver has committed a traffic violation." *United States v Andrews* 454 F.3d 919, 921 (8th Cir. 2006) (citation omitted). "Probable cause exists when a reasonable officer, confronted with the

---

[7] Defendant initially argued that his *Miranda* rights were violated. Defendant withdrew this argument at the evidentiary hearing. (TR. 78-79.)

[8] Pursuant to the MOU, dispatch notifies Sarpy County Sheriff's Office supervisors when it receives notice that an Omaha police officer will be working in Sarpy County.

facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." *Id*.

Officer Vaughn had probable cause to conduct a traffic stop. Officer Vaughn used a stopwatch to get a timed distance between the white vehicle and Defendant's vehicle. The stopwatch showed that the vehicles were traveling four-tenths of a second apart. Officer Vaughn testified that he believes two seconds is an acceptable distance between vehicles. The Eighth Circuit has determined that "[t]he two-second rule . . . is a widely used rule of thumb that accounts for the speed of traffic and is an appropriate measurement of whether a trailing car is maintaining a reasonable and prudent distance." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009) (internal quotation omitted).

Defendant seems to argue that he was not following a white vehicle too closely and that Officer Vaughn did not have reason to believe he committed a traffic violation. Defendant testified that prior to getting pulled over, he was not following any other vehicle. However, while he was in the cruiser, Defendant indicated to Officer Vaughn that he was following vehicles in front of him too closely because the vehicles in front of him had slowed down for law enforcement officers in front of them. The video shows a white passenger vehicle in front of Defendant and a white truck. (Ex. 5.) The undersigned concludes that the evidence supports Officer Vaughn's testimony that Defendant was following a white vehicle too closely just prior to the traffic stop.

Once the purpose of an initial traffic stop is complete, an officer cannot further detain the vehicle or its occupants unless something occurs during the traffic stop that generates the necessary reasonable suspicion to justify a further detention. *United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998). Absent reasonable suspicion, an officer may not broaden the investigation "beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S.Ct. 1609, 1612 (2015) (quotation omitted). Reasonable suspicion exists if an officer is aware of "particularized, objective facts which, taken together with rational inferences from those facts," reasonably warrant suspicion that a crime is being committed. *Beck*, 140 F.3d at 1136 (quotation omitted).

6

Following completion of the traffic stop, Officer Vaughn asked Defendant whether he could ask him additional questions. Defendant agreed. Officer Vaughn then asked Defendant whether he could search his vehicle. Defendant agreed and there is no indication that Defendant was pressured to provide consent or gave consent involuntarily.[9] There is no evidence that Defendant ever revoked consent. Therefore, Officer Vaughn's continued detention of Defendant and subsequent search of the vehicle were constitutionally sound.[10]

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress or, Alternatively, Dismiss the Indictment (Filing No. 13) be denied.

Dated this 22nd day of August, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

---

[9] Defendant does not argue that he did not consent to the search of the vehicle.

[10] In addition, Officer Vaughn observed indicators of hard driving, Defendant's explanation of travel kept changing, and Defendant was driving a rental vehicle with the windows partially open. Thus, even if Defendant had not volunteered to answer additional questions and consent to the search of the vehicle, Officer Vaughn had reasonable suspicion to broaden his investigation.